**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 25-cr-300-AHA** |
| v. | : | |
| | : | |
| **ZAVIER R. HILL,** | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' MEMORANDUM IN AID OF SENTENCING**

    The United States, by and through the undersigned counsel, respectfully submits this Memorandum in Aid of Sentencing for Zavier R. Hill.  As described herein, pursuant to a plea agreement between the parties, the Defendant is being sentenced on one count of violating 18 U.S.C. § 922(g).  A review of the record and the Defendant's criminal history confirms that the Defendant's conduct here warrants incarceration for a period of fifteen months.

**I.**    **SENTENCING GUIDELINES**

    **Part A: The Guidelines Calculation for the Offense**

    In the plea agreement, the parties estimated and agreed that the Defendant's offense level was 14 and that after application of a two-point reduction for acceptance of responsibility, the Estimated Offense Level would be at least 12.  See Plea Agreement at ¶ 4(A)-(B) ECF 16.  Specifically, the parties estimated that the following is the Guidelines calculation:

| | | |
|---|---|---|
| U.S.S.G. § 2B1.1(a)(1) | Base Offense Level | 14 |
| | **Offense Level** | **14** |
| U.S.S.G. § 3E1.1(a) | Acceptance of responsibility | -2 |
| | **Final Offense Level** | **12** |

### B. Defendant's Criminal History Score

The PSI calculated that the Defendant's prior convictions result in a criminal history score of four and that it placed the Defendant in Criminal History Category III.

### C. Applicable Guideline Range

The guideline range for a defendant with an offense level of 12 and a criminal history category of III is 15 to 21 months of incarceration.

### D. United States' Recommendation

The United States recommends, for the reasons set forth below, that the Defendant be sentenced to a period of 15 months of incarceration.

## II.    THE 18 U.S.C. § 3553(a) FACTORS

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines are no longer mandatory. However, the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and "should be the starting point and the initial benchmark" in determining a defendant's sentence. *United States v. Gall*, 552 U.S. 38, 46, 49 (2007). Accordingly, this Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id.* at 49.

The Court should consider all the applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* at 49-50. The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in § 3553(a). *United States v. Rita*, 551 U.S. 338, 347-351 (2007). The § 3553(a) factors include, *inter alia*: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for

2

the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant; (4) the need to avoid unwarranted sentence disparities; and (5) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(1)-(7).

### A. The Nature and Circumstances of the Offenses and the Need for the Sentence to Reflect the Seriousness of the Offenses

On August 26, 2025, at approximately 11:58 p.m., Metropolitan Police Department officers assigned to the DC Safe and Beautiful Task Force were patrolling the area of 5500 9th Street, N.W., Washington, D.C. Defendant Zavier Hill ("HILL") was observed walking in the south alley of 900 Longfellow, N.W. The officers were patrolling the same neighborhood in an unmarked vehicle. HILL was wearing all black clothing, but he also had on a shirt decorated with sequins. HILL began to act suspiciously upon seeing the police and appeared to drop something. Officer Al-Shrawi observed HILL turn away, walk to the end of the alley and, upon reaching the end of the alley, run in a westerly direction in the 900 block of Longfellow. Officer Al-Shrawi and other officers entered the alley that HILL just left. Officer Al-Shrawi immediately observed a firearm, which was a Ruger LCR .38 Special TP revolver, on the porch of 5512 9th Street, N.W.

3



The firearm was a revolver with five rounds of ammunition in the cylinder.  The firearm was later determined to be fully functional, with a barrel less than 12 inches, and capable of discharging a projectile by an explosion while being held with one hand.  The officers went on the radio and notified Officer DelBorrell of the presence of the gun and HILL was stopped in the 900 block of Longfellow.  HILL was identified as the person seen in the alley.  When asked by the police if he had a license to carry a gun, HILL indicated that he did not have a license.  HILL was then placed under arrest.  While waiting for a transport vehicle, HILL stated, "I know that my sh*t" and "at the end of the day fool, I'm not from here so I'm gonna keep something on me.  I am

gonna carry me some protection because there's kids out here don't give a fu*k."

HILL was subsequently interviewed after waiving his Miranda rights, and the statement was recorded by videotape. HILL stated that he was aware that he was "wrong" to possession a firearm. He claimed he had the firearm for "protection" from unidentified, dangerous individuals in the neighborhood. Hill went on to explain that his fear was not related to animus directed at him, but rather a generalized fear of people in the neighborhood. Finally. The defendant indicated that he was fully prepared to use the weapon. HILL explained to the agents that he "tossed" the gun when he observed the police. HILL indicated that he found the firearm but had a friend purchase ammunition for him in Virginia. Finally, HILL stated that he had the "little revolver" for about "a year."[1]

## B. The Need to Promote Respect for the Law and to Deter the Defendant And Others from This Type of Criminal Conduct

A significant sentence of imprisonment here is necessary for both specific deterrence and general deterrence. The United States realizes that the Court does not need to be reminded of the danger associated with illegally possessing a firearm. Indeed, the Court's docket and the newspapers are replete with instances of what can happen when there is an illegal firearm. More importantly, however, and as discussed in greater detail below, there is a definite need for the Court to take steps to deter the Defendant from continuing this type of criminal activity. Despite numerous arrests and convictions, including a prior firearm offense, the Defendant has yet to be dissuaded from engaging in criminal activity.

---

[1] Although the defendant has several older convictions, the conviction for felony fleeing and eluding in *State of Georgia v. Zavier Rashad Hill,* Criminal No. 08CR00898 is the predicate felony for the Defendant's conviction in the case before the Court.

C.  **The History and Characteristics of the Defendant**

Unlike some defendants who come before the Court, this Defendant has had every opportunity to choose a different path.  The Defendant ignored those opportunities.  He is a thirty-nine-year-old adult who made a conscious, knowing and informed decision to violate the law by carrying a firearm on the streets of the District of Columbia.  It is only appropriate for the judicial system to treat him accordingly.

Despite having reasons in his life for becoming and remaining a law-abiding citizen, he chose to place himself, law enforcement and the community at risk.  As he stated during his interview, he carried a deadly weapon and was prepared to use it if threatened.  The welfare of his family, those charged with protecting our community, and those who have the poor luck to be near him are of absolutely no concern to Defendant.

Instead of learning from his prior arrests and convictions, the Defendant made a conscious and informed decision to repeat his criminal conduct.  The Defendant's history makes it painfully clear that the Defendant had no regard for the law or other people in our community.

The Defendant criminal history includes membership in a gang in Georgia, a history that begins with obstruction of a law enforcement officer at age seventeen, simple battery, theft, driving without a valid license, possession of marijuana, illegal possession of a firearm in Florida, and lewd and indecent acts in the District of Columbia.  In fairness,  most of these convictions are old and the United States does not possess information that the Defendant has committed a murder, robbed a bank or committed treason.  But, despite nearly twenty-five years of experience with the criminal justice system, the Defendant chose to arm himself with an

6

illegal handgun. By this point in his life the Defendant can no longer be considered as a juvenile who made an isolated mistake.

The PSI also reflects that the Defendant is a person who does not obey the law, does poorly on probation, and simply does not learn. Instead, the Defendant dissembles and blames others for his own criminal behavior. The Defendant was nearly forty years old at the time when he illegally carried a firearm on the streets of D.C. When a prior conviction for illegally possessing a firearm, the Defendant made a fully informed decision to heighten the possibility of gun violence in the District of Columbia.

There are also those defendants who come before the Court seeking to justify criminal conduct because of a lack of options. This Defendant cannot make that argument here. The Defendant has children, and he was in a long-term, committed relationship. The Defendant had a home at the time he decided to walk the streets with a gun in his pocket. Further, although not employed, the Defendant receives a disability check.

### D. Unwarranted Sentencing Disparities

The District of Columbia Circuit has recognized that there will "inevitably . . . [be] sentencing disparities and inequities that can be explained by little more than the identities of the sentencing judges." *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008); *see also United States v. Saez*, 444 F.3d 15, 19 (1st Cir. 2006) ("[W]ith different judges sentencing two defendants quite differently, there is no more reason to think that the first one was right than the second."). The Guidelines "reduce unwarranted federal sentencing disparities," *Freeman v. United States*, 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences."

*Id.* at 533. A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range." *Gall v. United States*, 552 U.S. 38, 54 (2007). "[I]mposing a within-guidelines sentence is the surest way to avoid unwarranted disparities." *United States v. White*, 737 F.3d 1121, 1145 (7th Cir. 2013). The United States' recommendation is consistent with the recommendation in the PSI.

### III.    RESTITUTION AND FORFEITURE

#### A.  Restitution

Restitution is mandatory under 18 U.S.C. § 3663A. *See, e.g., United States v. Dickerson*, 370 F.3d 1330, 1335-36 (11th Cir. 2004) ("The MVRA obligates district courts to order restitution in certain cases, including wire fraud."); *United States v. Polichemi*, 219 F.3d 698, 707, 714 (7th Cir. 2000) ("[T]he court must follow the provisions of the Mandatory Victim Restitution Act of 1996 . . . because Olson was convicted of an offense of property [money laundering under § 1957] as described in § 3663A(c)(1)(A)(ii)."). The United States is not aware of any restitution.

#### SPECIAL CONDITIONS OF THE SENTENCE AND SUPERVISED RELEASE:

The government agrees with the special conditions proposed by the United States Probation Office in the PSI. *See* PSI at ¶¶ 106-113. This includes a restitution obligation, financial disclosure, financial restrictions, employment restrictions, and substance abuse testing. *Id.*

#### CONCLUSION

The United States respectfully submits that a sentence of 15 months of incarceration, three years of supervised release, and restitution and forfeiture as described herein is an appropriate and

fair sentence considering the offense conduct, the need for specific and general deterrence, and the history and characteristics of the Defendant.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:    /s/ *Michael T. Truscott*_____
MICHAEL T. TRUSCOTT
D.C. Bar No. 1685577
Assistant United States Attorney
Fraud, Public Corruption, and Civil Rights
Section
601 D Street, NW, Room 5.1513
Washington, DC 20530
(202) 252-7223
Michael.truscott2@usdoj.gov

9